

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 3, 2020**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 7 |
|  | § |  |
| WILLIAM BERRY DEAN, III | § | Case No. 19-31232 (SGJ) |
| Debtor. | § |  |
|  | § |  |
| RETICULUM MANAGEMENT, LLC | § |  |
| Plaintiff. | § |  |
|  | § |  |
| v. | § | Adv. Pro. No. 19-3242 |
|  | § |  |
| WILLIAM BERRY DEAN, III | § |  |
| Defendant. | § |  |
|  | § |  |
| v. | § |  |
|  | § |  |
| RETICULUM MANAGEMENT, LLC | § |  |
| Counter-Defendant. | § |  |

**MEMORANDUM OPINION AND ORDER REGARDING: (I) PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF NO. 30]; AND (II)
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF NO. 33]**

I.    **Introduction**.

For collateral estoppel to apply in Section 523 dischargeability actions, a bankruptcy court has to see how the sausage was made. This does not mean that a prior, adjudicating court or an arbitration panel must have conducted a full evidentiary hearing. But what it does mean is that the prior adjudicator must have provided specific, subordinate findings of fact to support its decision.

In this case, plaintiff Reticulum Management, LLC ("Reticulum"), defendant William Berry Dean, III (the "Debtor"), and co-defendant Jacob Watters (the "Co-Defendant") engaged in a three-day arbitration hearing on Reticulum's claims of fraud, fraud by non-disclosure, fraudulent inducement, and negligent misrepresentation. A panel of three arbitrators (the "Arbitration Panel") presided over the hearing. After listening to three days of testimony and considering extensive briefing by the parties and numerous exhibits, the Arbitration Panel determined that the Debtor and Co-Defendant made negligent misrepresentations to Reticulum. In its written decision, the Arbitration Panel concluded that Reticulum either did not meet its burden on its fraud-based claims or could not overcome the defendants' defenses to those claims. This was an interim award (the "Interim Award") because Reticulum, as the prevailing party, needed to submit an application for an award of attorneys' fees, costs, and expenses so that the Arbitration Panel could calculate those damages.

The Debtor could have requested a reasoned award where the Arbitration Panel would provide findings of fact to support its conclusions regarding Reticulum's fraud-based claims. He also could have waited for the Interim Award to become final. Instead, he opted to file bankruptcy. The Debtor's failure to request the recipe or allow the Interim Award to become final is fatal to his argument that the Interim Award should be given preclusive effect.

## II.     **Jurisdiction and Venue**.

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). The bankruptcy court has authority to adjudicate this matter pursuant to the United States District Court for the Northern District of Texas Miscellaneous Order No. 33. The following shall constitute this court's reasoning pursuant to Fed. R. Civ. P. 56, as made applicable in adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

## III.     **Undisputed Facts**.

The Debtor and Co-Defendant were officers and members of Total Operating, LLC, a pipeline construction and maintenance contractor.[1] Due to mounting financial challenges, Total Operating sought short-term financing from Reticulum.[2] On July 27, 2015, Reticulum and Total Operating entered into a Sale and Buyback Agreement whereby Reticulum provided $500,000.00 to Total Operating ($400,000.00 was provided to Reticulum by Fred Brown and $100,000.00 was provided to Reticulum by Russell Watters' trust; Russell Watters is the Co-Defendant's father).[3] The $500,000.00 was supposed to be repaid by October 30, 2015 and, if not, the Sale and Buyback Agreement would be converted to a one-year note.[4] Total Operating did not repay the funds by the deadline. Thereafter, the Co-Defendant, as manager of Total Operating, signed a Security Agreement, effective October 30, 2015, in favor of Reticulum, granting it a security interest in certain assets to secure Total Operating's indebtedness to Reticulum.[5] In early 2016, Total Operating sold assets that Reticulum claimed as its collateral under the Security Agreement.[6]

---

[1] App. To Pl.'s Mot. Summ. J., APP 7.

[2] *Id*.

[3] *Id*.

[4] *Id*.

[5] *Id*. at APP 8.

[6] *Id*.

Reticulum filed suit in state court seeking damages for breach of contract and to enjoin the sales made by Total Operating.[7] Total Operating filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code on July 30, 2016.[8]

Reticulum filed a proof of claim in Total Operating's bankruptcy case, originally as an unsecured claim, but later amended the claim to provide that it was a secured claim.[9] Reticulum's damages were based on the amount it loaned to Total Operating, $500,000.00, plus accrued interest.[10] Reticulum later sold its right to recovery in connection with this proof of claim to Russell Watters for $325,000.00.[11]

On May 23, 2017, Reticulum filed suit against the Debtor and the Co-Defendant individually in state court, alleging fraud, fraud in the inducement, fraud by non-disclosure, conversion, and negligent misrepresentation.[12] Both the Debtor and the Co-Defendant denied the allegations, arguing that Reticulum's claims were barred by both the parol evidence rule and the integration clause of the underlying Sale and Buyback Agreement. They alleged that any representations made by them constituted opinions rather than actionable representations, thus not rendering them liable for any damages.[13]

The matter was sent to arbitration. The arbitration panel held a three-day hearing on Reticulum's claims. Reticulum was represented by co-counsel in the current adversary proceeding, Julie Pettit, and the Debtor and Jacob Watters each had independent representation. More than 100

---

[7] *Id.*

[8] *Id.*

[9] Case No. 16-70245, Claim No. 41-1; 41-2.

[10] Claim No. 41-2, 39-40.

[11] Clark Dec., Exs. D and E, ECF. No 47-1.

[12] App. to Pl.'s Mot. Summ. J., APP 8.

[13] *Id.* at APP 9.

exhibits were admitted, four live witnesses testified, the parties submitted pre-hearing briefing, and each party made an opening and closing statement. The transcript for the three-day hearing was nearly 900 pages in length.

On December 3, 2018, the three-person arbitration panel issued the Interim Award. In the Interim Award, the Arbitration Panel found that Reticulum proved all elements of its cause of action for negligent misrepresentation, making specific findings that:

- Defendants made negligent misrepresentations to Reticulum concerning the actual financial condition of Total Operating and its likelihood of survival, the so-called Jetta project, the likely availability of proceeds from the Jetta project, and the intended use of both the funds that would be coming from Reticulum and the proceeds from the Jetta project in connection with the Sale and Buyback Agreement;

- Reticulum's claims against the defendants were not barred by the Texas two-year statute of limitations because the discovery rule applied and the information about Total Operating's true financial condition was not discoverable by Reticulum until at least 2016;

- Reticulum's negligent misrepresentation claim was not barred by the economic loss doctrine because Reticulum presented sufficient evidence that it suffered a recognizable economic loss, the interest Reticulum purchased under the Sale and Buyback Agreement was not worthless at the time of purchase, and the economic loss doctrine was not even applicable as the defendants were not parties to the Sale and Buyback Agreement; and

- To the extent it was even applicable, the usury defense raised by the Debtor was overruled and denied.[14]

As stated earlier, the Arbitration Panel found that there was insufficient evidence either to establish all the elements for fraud, fraud in the inducement, and fraud by non-disclosure *or* to overcome the Defendants' defenses and legal arguments on the these claims.[15] On account of the negligent misrepresentation claims, the Arbitration Panel awarded Reticulum $500,000.00 plus attorney's fees, expenses, and costs of the arbitration.[16] In awarding Reticulum its fees and costs, the Arbitration Panel relied on a prevailing party provision in the Sale and Buyback Agreement, despite that the Debtor and Co-Defendant were not parties to that agreement.[17] It denied Reticulum's claims for exemplary damages.[18] The Arbitration Panel determined that the Debtor and Co-Defendant were jointly and severally liable for Reticulum's damages.[19]

Soon after the Interim Award, on January 9, 2019, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code.[20] The deadline to object to discharge was set for July 8, 2019, but Reticulum and the Debtor agreed to extend the deadline ultimately to December 22, 2019.[21]

On March 12, 2019, the arbitration panel issued a Final Award against the Co-Defendant after the Debtor was severed from the state court proceeding because of his bankruptcy case.[22] It awarded Reticulum $500,000.00 in damages plus $434,966.36 in attorney's fees, $34,736.39 in

---

[14] *Id*. at APP 10.

[15] *Id*. at APP 9-10.

[16] *Id*. at APP 10-11.

[17] *Id*. at APP 10.

[18] *Id*.

[19] *Id*. at APP 11.

[20] Case No. 19-31232, ECF No. 1.

[21] Case No. 19-31232, ECF No. 46.

[22] App. to Def.'s Mot. Summ. J., 16-20.

pre-award interest, $8,085.00 for arbitration administrative fees, and post-award interest at 5.25% per annum.[23] The Arbitration Panel noted in the Final Award that "[w]hile the bankruptcy stay prevents the Panel from entering a final award against [the Debtor] at this time, the entering of this final award solely against [the Co-Defendant] is not intended to vitiate the Panel's previous finding of joint and several liability."[24] The state court approved the Final Award and signed a judgment to this effect.[25]

On the last day of the extended deadline to object to discharge, Reticulum filed its Complaint asserting the following eight causes of action:

| Cause of Action | Relevant Statute | Explanation |
|---|---|---|
| Count 1 | Objection to Dischargeability Under 11 U.S.C. § 523(a)(2)(A) | Debtor made deliberate misrepresentations to Reticulum regarding the terms, duration, and secured status of the loan, as well as its approval by Total Operating's Board. |
| Count 2 | Objection to Dischargeability Under 11 U.S.C. § 523(a)(2)(B) | Debtor prepared a presentation for Reticulum when Reticulum was considering the loan that misrepresented the value of Total Operating's assets. |
| Count 3 | Objection to Dischargeability Under 11 U.S.C. § 523(a)(6) | Debtor acted to injure Reticulum when he caused a provision regarding unfactored receivables to be added to the Agreement (while intending for no unfactored receivables to exist), did not turn over certain unfactored receivables, and acted to sell Reticulum's collateral to third parties. |
| Count 4 | Objection to Discharge Under 11 U.S.C. § 727(a)(2) | Rather than taking a salary directly from Craftsman Entities, Debtor transferred funds from the Craftsman Entities to his trust, in order to hinder, delay, or defraud Reticulum. |
| Count 5 | Objection to Discharge Under 11 U.S.C. § 727(a)(3) | Debtor has failed to keep records from which his financial condition/business transactions might be ascertained, particularly with respect to his trust. |

---

[23] *Id*. at 17-18.

[24] *Id*. at 19.

[25] *Id*. at 972-73.

| Count 6 | Objection to Discharge Under 11 U.S.C. § 727(a)(4) | To shield Craftsman Entities, and his trust income therefrom, from this Case, Debtor knowingly and fraudulently omitted from his SOFA all Craftsman Entities of which he is an officer, director, or managing executive. |
| Count 7 | Objection to Discharge Under 11 U.S.C. § 727(a)(5) | Debtor has failed to explain satisfactorily any deficiency of assets to meet the Debtor's liabilities, particularly the Reticulum Debt, especially when, over the past three years, Debtor has withdrawn hundreds of thousands of dollars from his trust, to maintain his "lifestyle." |
| Count 8 | Attorney's Fees and Costs (pleaded as a cause of action) | Reticulum requests recovery of its attorney's fees and costs incurred in connection with bringing the Adversary Proceeding. |

The Debtor earlier moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and Bankruptcy Rule 7012 (the "Motion to Dismiss"), claiming that this court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine and that the state law arbitration proceeding rejecting and denying Reticulum's fraud-based claims precluded Reticulum from relitigating those issues in the bankruptcy court.[26] Reticulum objected to the Motion to Dismiss on the grounds that the Interim Award was not a final judgment and that the arbitration panel did not make "specific, subordinate, factual findings on the identical dischargeability issue in question."[27] The court held a hearing on the Motion to Dismiss on March 9, 2020. At the hearing, the court determined that the *Rooker-Feldman* doctrine was inapplicable and, thus, signed an order denying the Motion to Dismiss on March 12, 2020.

After the Debtor's Motion to Dismiss proved unsuccessful, he filed his Answer to Original Complaint Objecting to Dischargeability of a Debt under 11 U.S.C. § 523 and Objecting to

---

[26] Def.'s Mot. Dismiss, ECF No. 7.

[27] Pl.'s Resp. to Def.'s Mot. Dismiss, ECF No. 10.

Discharge under 11 U.S.C. § 727 and Defendant's Counterclaim Objecting to Plaintiff's Claim and Proof of Claim (the "Answer").[28] In his Answer, the Debtor asserted seven affirmative defenses:

1.  Failure to state a claim;

2.  Reticulum's lack of justifiable or reasonable reliance;

3.  The Debtor's good faith/lack of actual fraudulent or deceptive intent;

4.  Lack of proximate cause;

5.  Preclusion (*res judicata* or collateral estoppel);

6.  Offset, recoupment, credits, payments – single satisfaction rule; and

7.  Failure to mitigate damages.

The Debtor also made what it refers to as a "counterclaim and objection to claim." To be more specific, it is an objection to Reticulum's proof of claim and a request for an accounting.

Both parties moved for partial summary judgment. On May 29, 2020, Reticulum filed its Motion for Partial Summary Judgment and Brief in Support of its Motion for Partial Summary Judgment (collectively, the "Reticulum MSJ"), requesting summary judgment on the Debtor's fifth, sixth, and seven affirmative defenses, and his counterclaim.[29] The Debtor filed his Motion for Partial Summary Judgment and Memorandum of Law in Support of Defendant's Motion for Partial Judgment (collectively, the "Debtor MSJ") four days later.[30] In the Debtor MSJ, the Debtor contends that he is entitled to summary judgment on Reticulum's Section 523 causes of action because these claims are precluded under the doctrine of collateral estoppel. Each party submitted

---

[28] ECF No. 14.

[29] ECF Nos. 30 and 31.

[30] ECF Nos. 33 and 34. The Debtor also filed a Motion for Judgment on the Pleadings (ECF No. 38), seeking judgment on the pleadings as to Reticulum's § 727 causes of action. The court signed an order denying that motion on August 3, 2020 (ECF No. 64).

evidence as support for their respective motions for summary judgment, filed responses to the opposing party's motion for summary judgment, and filed replies in opposition to the respective responses.[31]

On July 15, 2020, this court heard oral argument on the Reticulum MSJ and the Debtor MSJ. Counsel for the Debtor and Reticulum each made a compelling case for his or her client's respective positions. After considering the extensive briefing of the parties, the evidence, and oral arguments of counsel, the court concludes that the Reticulum MSJ should be granted as to the Debtor's fifth affirmative defense. The motions are otherwise denied.

## IV. Summary Judgment Standard.

In deciding a motion for summary judgment, a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[32] In making this determination, the facts and inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party.[33] A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial.[34] In order to support or refute an assertion that a genuine issue of material fact exists, the parties must cite to particular parts of the record, show that the materials cited do not establish the absence or presence of a general dispute, or show that an adverse party cannot produce admissible evidence to support

---

[31] ECF Nos. 47, 49, 50, 55 and 56.

[32] *See* Fed. R. Civ. P. 56, as made applicable by Fed. R. Bankr. P. 7056.

[33] *Berquist v. Washington Mutual Bank*, 500 F.3d 344, 349 (5th Cir. 2007).

[34] *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001).

the fact.[35] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[36]

## V.    **Analysis.**

*A. Preclusion.*

Both parties seek summary judgment on the issue of whether the award by an arbitration panel in Texas state court should be given preclusive effect under res judicata or collateral estoppel. Res judicata is a doctrine which affords preclusive effect to a judgment.[37] "The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion."[38] Claim preclusion, or true res judicata, precludes parties from relitigating claims or causes of action that were or could have been raised in earlier litigation.[39] Under issue preclusion, or collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different claim or cause of action involving a party to the first case.[40] "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions."[41]

---

[35] Fed. R. Civ. P. 56(c)(1).

[36] *Pylant v. Hartford Life and Acc. Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[37] *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

[38] *In re Reddy Ice Holdings, Inc.*, 611 B.R. 802, 808 (Bankr. N.D. Tex. 2020) (quoting *Test Masters Educational Services, Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005)).

[39] *Id*.

[40] *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

[41] *Taylor,* 553 U.S. at 891.

In the Debtor's fifth affirmative defense, he contends that Reticulum's claims are barred by *res judicata/*claim preclusion and collateral estoppel/issue preclusion. Preclusion, however, is inapplicable here.

### B. True Res Judicata/Claim Preclusion

As this court discussed in great detail in *Tomlinson v. Clem (In re Clem)*, "The United States Supreme Court, in *Brown v. Felsen,* held that the doctrine of res judicata (*i.e.,* claim preclusion) does ***not*** apply in bankruptcy dischargeability proceedings."[42] Since this action is a bankruptcy dischargeability proceeding and the Supreme Court's decision in *Brown v. Felsen* is binding on this court, Reticulum is entitled to judgment as a matter of law as to the Debtor's defense of res judicata/claims preclusion.

### C. Collateral Estoppel/Issue Preclusion

The more challenging question is whether collateral estoppel/issue preclusion is applicable in the matter currently before the court. Unlike res judicata, the Supreme Court clarified in *Grogan v. Garner* that collateral estoppel may apply in bankruptcy dischargeability proceedings.[43] Further, in certain circumstances, a court may give preclusive effect to an arbitration award pursuant to the doctrine of collateral estoppel.[44] In fact, this court previously addressed whether findings by a Texas state arbitration panel should be given collateral estoppel effect in a bankruptcy nondischargeability action. In *Clem*, Mr. and Ms. Tomlinson entered into a contract with Bella Vita Custom Homes, LLC ("Bella Vita"), to build a luxury home in North Texas. The debtor, Mr. Steven Clem, was Bella Vita's chief executive officer and a significant shareholder. To put it

---

[42] 583 B.R. 329, 338-39 (Bankr. N.D. Tex. 2017) (citing *Brown v. Felsen,* 442 U.S. 127, 133–39 (1979) (emphasis supplied)).

[43] 498 U.S. 279, 284 n. 11 (1991).

[44] *Clem,* 583 B.R. at 340 (citing *Universal Am. Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991)).

mildly, things did not go as expected. The Tomlinsons ultimately terminated the contract and sued both Bella Vita and Mr. Clem in a Texas state court. That court ordered that the parties participate in an arbitration on the Tomlinson's contract, negligence, DTPA, and fraud-based claims.

Approximately one year later, the arbitration panel awarded the Tomlinsons damages on their contract and DTPA claims, determining that Bella Vita and Mr. Clem were jointly and severally liable for their damages. The arbitration panel denied the Tomlinsons' claims for misrepresentation, fraud, fraud in the sale of real estate, conversion, estoppel, alter ego, and joint enterprise, finding that they were not sustained by a preponderance of the evidence. The Texas state court entered a final judgment confirming the arbitration award, and Mr. Clem filed for bankruptcy about two-and-a-half months later. The litigation spilled over into the bankruptcy court with the Tomlinsons contending that Mr. Clem's debt was not dischargeable as to them pursuant to Section 523(a)(2)(A) of the Bankruptcy Code. Similar to this case, Mr. Clem moved for summary judgment on the grounds that the arbitration panel found that the Tomlinsons did not meet their burden on their fraud-based claims and that finding precluded the Tomlinsons from relitigating the issue of fraud in the nondischargeability action.

This court disagreed. The burden rested on the shoulders of Mr. Clem because "the party asserting issue preclusion bears the burden of proof."[45] In order to meet his burden, Mr. Clem needed to demonstrate that "(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."[46] Yet, while satisfying these elements would be a necessary condition for collateral estoppel to apply in dischargeability

---

[45] *Id*. at 342.

[46] *Id*. at 340-341 (quoting *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997)).

actions, it would not be sufficient.[47] Dischargeability actions are a creature of federal bankruptcy law, not state law.[48] Pursuant to federal bankruptcy law, Mr. Clem was required to show that the first court "made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record."[49] According to this court, "[o]nly in limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues."[50] This court denied the motion for summary judgment in *Clem* since, among other reasons, the arbitration panel's record was utterly devoid of anything that could allow it to ascertain whether it made specific, subordinate, factual findings on the dischargeability question at issue. There was no transcript of testimony and very scant reasoning in the arbitration award.

This case has two wrinkles that were not present in *Clem*: 1) the Interim Award never became a final judgment as to the Debtor; and 2) there is a nearly 900-page record of the arbitration panel. Neither of these wrinkles warrant a different legal outcome.

### *1. Is the Arbitration Award "Final" for Collateral Purposes?*

Collateral estoppel requires a final judgment in order to be preclusive.[51] Interim rulings, like the Interim Award, are not final judgments.[52] The Debtor concedes, as he must, that he was

---

[47] *Id*. at 341-42.

[48] *Id*. (citing *Dennis v. Dennis (In re Dennis), 25 F.3d 274, 278 (5th Cir. 1994), cert. denied*, 513 U.S. 1081, (1995)).

[49] *Id*. at 342.

[50] *Id*. at 344.

[51] *See Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991).

[52] *See Bridgestone Lakes Cmty. Improvement Ass'n, Inc. v. Bridgestone Lakes Dev. Co., Inc.,* 489 S.W.3d 118, 127 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). ("[C]ollateral estoppel cannot apply unless there is a final

not included in the final award and judgment issued against the Co-Defendant due to his intervening bankruptcy case. He instead relies on the final award and judgment against the Co-Defendant, contending that he was in privity with the Co-Defendant. However, privity is inapplicable here because the Debtor was a party in the state court litigation.

Privity in the preclusion context, is essentially the umbrella term for the exceptions to the rule against nonparty preclusion, which is that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."[53] The Debtor's argument would require the court to pretend that he was not served with the state court lawsuit, is a nonparty to the state court lawsuit, and that the lawsuit is not stayed as to him. This is something the court is unwilling to do. The automatic stay froze the litigation as to the Debtor at the time he filed for bankruptcy protection. Unless the stay is lifted and Reticulum obtains a final award and judgment against the Debtor, the award remains interim as to him. The Debtor made the choice to seek bankruptcy protection prior to the Interim Award becoming final against him; for better or worse, the Debtor is stuck with this choice.

2. *Were the Arbitration Panel's Findings on Fraud, Plus the Nearly 900-Page Record, Sufficient to Satisfy the "Specific, Subordinate Findings of Fact" Test?*

In addition to needing a final judgment for collateral estoppel to apply to dischargeability actions, the first court must have made specific, subordinate, factual findings on the identical dischargeability issue in question, and the facts supporting the court's findings must be discernible from that court's record. In this case, the Arbitration Panel concluded that "there is not sufficient evidence to establish all the elements of the causes of action for fraud, fraud by non-disclosure and

---

judgment, and the summary-judgment order that the Defendants were citing as the basis for their collateral-estoppel defense was interlocutory, not final.").

[53] *Taylor v. Sturgell*, 553 U.S. 880, 893 (2009) (internal citations and quotations omitted).

fraudulent inducement asserted by Reticulum against [the defendants] or to overcome all the defenses and legal arguments raised by [the defendants] to the fraud, fraud by non-disclosure and fraudulent inducement claims."[54] As was the case in *Clem*, this conclusion is insufficient for the court to determine that the Arbitration Panel made specific, subordinate, factual findings on the dischargeability question at issue. Yet, unlike in *Clem*, there is an extensive record of the arbitration proceeding. The Debtor painstakingly reviewed that record, citing instances where he claims that the record specifically supports the Arbitration Panel's general conclusions. The court commends the Debtor's efforts, but the Debtor's argument would require the court to *infer*, from the record, that certain evidence therein might have supported specific, subordinate findings of fact by the Arbitration Panel that would preclude each nondischargeability issue in question—that is not the test. Instead, the court is supposed to review the record to determine whether specific, subordinate findings of fact were actually made by the Arbitration Panel. Here, the record is not relevant because the Arbitration Panel did not actually make specific, subordinate factual findings as to any of the dischargeability issues present in this case.

The Fifth Circuit addressed the sufficiency of a prior court's findings of fact for collateral estoppel purposes in *Raspanti v. Keaty (In re Keaty)*.[55] In *Keaty*, the debtor, a colleague, and their law firm (collectively, the "Keatys") were hired to represent a plaintiff in a Louisiana state court lawsuit. One defendant settled the lawsuit against it and the trial court eventually ruled in favor of the remaining defendant. Shortly after the Keatys appealed the adverse ruling, the plaintiff replaced the Keatys with Roy A. Raspanti. Raspanti's appeal was successful and the remaining defendant settled. A fee dispute arose between the Keatys and Raspanti, spurring litigation that persisted for

---

[54] App. to Pl.'s Mot. Summ. J., APP 9-10.

[55] 397 F.3d 264, 274 (5th Cir. 2005).

more than a decade. This litigation culminated in the Louisiana Fourth Circuit Court of Appeal awarding sanctions to Raspanti.

Later, when Keaty filed bankruptcy, Raspanti objected to the debtor's discharge, arguing that the appellate court's award of sanctions should not be dischargeable under Section 523(a)(6) of the Bankruptcy Code. Raspanti moved for summary judgment, relying on the appellate court's findings in contending that collateral estoppel precluded the debtor from relitigating the issue of whether Raspanti's claim resulted from a willful and malicious injury. The bankruptcy court disagreed, reasoning that the issue was not "actually litigated" because the state court never held an evidentiary hearing regarding the debtor's conduct. Accordingly, the bankruptcy court refused to give preclusive effect to the state appellate court's findings. Raspanti appealed and the district court affirmed; Raspanti subsequently appealed to the Fifth Circuit Court of Appeals.

The Fifth Circuit reversed. It first addressed whether all of the elements of collateral estoppel were satisfied, concluding that they were.[56] The court then explained that:

> Our conclusion that the elements of collateral estoppel have been met, however, is not the end of our inquiry. We must next determine whether the state appellate court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue. In other words, we must ascertain whether a claim for sanctions under Louisiana law encompasses the elements of the willful and malicious injury requirement under § 523(a)(6) of the Bankruptcy Code and whether the state appellate court's findings satisfy the elements of the "willful and malicious injury" requirement.[57]

The Fifth Circuit determined that the first court's findings unquestionably satisfied the elements of Section 523(a)(6) where the first court made specific findings demonstrating: i) the debtor's motive in filing the frivolous claim for attorney's fees, which was to injure Raspanti; ii) that the

---

[56] *Id*. at 271-73.

[57] *Id*. at 273 (internal citations and quotations omitted).

debtor's actions were substantially certain to injure Raspanti, since deliberately and needlessly prolonging the proceedings would necessarily cause Raspanti financial injury; and iii) that he acted willfully and maliciously to injure Raspanti.

Four years later, Judge Leif Clark was asked to determine whether collateral estoppel precluded a debtor from relitigating the same issue as in *Keaty*.[58] He concluded that the state court's findings of fact did not satisfy the requirements set forth in *Keaty*. In making this determination, Judge Clark found that, unlike in *Keaty*, the first court did not make the requisite specific findings that would permit the court to find collateral estoppel should apply. Specifically, he provided that:

> [The first court's] orders do not state that [the debtor] knew or should have known that by filing the Certification Motion he would injure the *Plaintiffs,* or, even that [the debtor] was motivated by an improper purpose. [The first court] states that '[the debtor] represents a very real danger to putative class members ...,'; but the putative class members are not the Plaintiffs. In the Rule 11 Sanctions, [the first court] stated that 'it is appropriate to sanction [the debtor] under Rule 11 in order to deter his dangerous and wasteful behavior and future baseless filings.' These are worthy purposes that justify the imposition of sanctions under Rule 11. They do not, of themselves, also satisfy the elements for nondischargeability under § 523(a)(6). There is simply no indication in [the first court's] findings that the debtor—either subjectively or objectively—actually intended to harass or otherwise injure the Plaintiffs or the legal process by filing the Certification Motion. The Debtor indeed may *have* intended to harass the Plaintiffs by filing the Class Action Suit, but [the debtor] was *sanctioned* for filing the Certification Motion. Although [the first court] very strongly admonishes [the debtor's] failure to investigate either the law or the facts, this court does not believe that either the Rule 11 Order or the Rule 11 Sanctions contain findings sufficient to support the conclusion that, by filing the Certification Motion, Powers' intended to willfully and maliciously injure the Plaintiffs.[59]

---

[58] *LVNV Funding, LLC v. Powers (In re Powers)*, 421 B.R. 326 (Bankr. W.D. Tex. 2009).

[59] *Id*. at 340.

According to the court, "It all depends upon the findings of fact made by the judge imposing sanctions in the first place."[60, 61]

As was the case in *Powers*, there are no specific, subordinate findings of fact by the Arbitration Panel that would allow this court to determine whether its ruling encompassed the same prima facie elements as the nondischargeability causes of action. The Debtor recognized at the hearing on his Motion to Dismiss that the arbitration panel's failure to make findings as to each element could preclude the court's application of collateral estoppel. As Reticulum correctly points out, the Debtor could have requested a reasoned opinion, but did not do so. The lack of specific findings of fact relating to each nondischargeability element is fatal to the Debtor's defense of collateral estoppel.

Further, this court has noted that "the application of collateral estoppel from arbitral findings is not required but is a matter within the broad discretion of the court."[62] For the reasons stated above, the court does not believe it should exercise its discretion to apply collateral estoppel here. The court also declines to extend collateral estoppel for similar reasons to those in *Clem*. Even though there is a more extensive arbitration record in this case, it does not foreclose the possibility that Reticulum chose a legal strategy in which it did not put on full evidence of fraud,

---

[60] *Id*. at 338.

[61] A Fifth Circuit opinion cited by the Debtor, *Recoveredge, LP v Pentecost* 44 F.3d 1284, 1294 (5th Cir. 1994), is consistent with *Keaty* and *Powers*. In that case, a jury was asked to issue a special verdict on whether a debtor had engaged in a civil conspiracy to commit fraud. When asked if it had found this to be the case by a preponderance of the evidence, the jury answered no. When a party later objected to the debtor's dischargeability, arguing on the basis of the same facts at issue in the earlier case that the debtor had committed fraud, the court held collateral estoppel applied because the jury had already decided this matter in the prior litigation. Key to the court's ruling was that the jury received comprehensive and thorough instructions, breaking down each element of the issue the jury had to decide.

[62] *See Clem*, 583 B.R. at 340, *see also JChem, Inc*., 946 at 1137 (recognizing in a non-bankruptcy context that "[t]he application of collateral estoppel from arbitral findings is a matter within the broad discretion" of a federal district court).

opting instead to make a case for the much easier to prove negligent misrepresentation cause of action. "After all, the Plaintiffs-Creditors were not facing a 'defense' of bankruptcy at that time."[63]

The court is also not inclined to give preclusive effect to the final judgment that Reticulum obtained, post-petition, against the Co-Defendant (based on Debtor's privity argument) because, among other reasons, the Debtor and the Co-Defendant were at least somewhat adverse to each other in the underlying litigation. The Debtor's state court counsel elicited testimony attempting to show that if anyone made misrepresentations to Reticulum it was the Co-Defendant, while the Co-Defendant's counsel leaned heavily on the defense that the Co-Defendant made representations in reliance on information provided to him by the Debtor.

## D. Single Satisfaction Rule; Objection to Claim/Counterclaim; Failure to Mitigate Damages

In addition to preclusion, Reticulum seeks summary judgment on the Debtor's sixth affirmative defense (single-satisfaction rule), seventh affirmative defense (failure to mitigate damages), and his claim objection, which is asserted as a counterclaim.[64] In response, the Debtor submitted the Declaration of Tom C. Clark, which contained six exhibits.[65] One of those exhibits, Exhibit D, is a Bill of Sale/Assignment of Right, dated November 2, 2019, whereby Reticulum assigned its right to recovery in connection with the proof of claim it filed in the Total Operating bankruptcy case to Russell Watters for $325,000.00.[66] The proof of claim Reticulum filed against

---

[63] *Clem*, 583 B.R. at 345-46.

[64] The single satisfaction rule provides that a plaintiff is entitled to only one recovery for the damages suffered. *See GE Capital Commercial, Inc. v. Worthington Nat. Bank*, 754 F.3d 297, 304–05 (5th Cir. 2014). Failure to mitigate damages is an affirmative defense that "prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff." *Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995).

[65] Clark Dec., ECF. No 47-1.

[66] *Id*. at Ex. D. The court notes that Exhibits D and E are identical except that one exhibit is signed by a representative for Reticulum, while the other is signed by an LLC formed by Russell Watters.

Total Operating, of which the court will take judicial notice,[67] is for the $500,000.00 that Total Operating borrowed, but failed to pay, plus accrued interest.[68]

The Declaration—to which Reticulum did not object—provides more than sufficient evidence for the court to find that a material fact issue exists as to the remaining affirmative defenses and the counterclaim. When viewed in a light most favorable to the non-moving Debtor, a reasonable fact-finder could conclude that Reticulum's claim should be reduced by at least the $325,000.00 Russell Watters paid to purchase Reticulum's claim against Total Operating. The claim Russell Watters purchased from Reticulum was its claim for damages arising out of the money Total Operating received from Reticulum pursuant to the Sale and Buyback Agreement. Damages awarded by the Arbitration Panel were reliance damages arising out the same Sale and Buyback Agreement, due to the negligent misrepresentations of the Debtor and the Co-Defendant. "Reliance damages entitle a plaintiff to be reimbursed for the out-of-pocket expenditures that were caused by his reliance on the contract, in order to put him in the same position he would have been in if the contract had not been made."[69] In this case, if the court were to accept Reticulum's argument and allow its claim in full, it could receive an amount that would put Reticulum in a far better position than it would have been if Reticulum never entered into the Sale and Buyback Agreement.

There is a representation in the Bill of Sale/Assignment of Right, that "This Bill of Sale does not include any recoveries that Reticulum may at any point in time (present or future), receive from Jacob Watters or Barrett Dean individually. Buyer shall have no claim to any rights

---

[67] *See* Fed. R. Evid. 201(b)(2), (c)(1) (A court may take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably questioned on its own initiative.)

[68] Case No. 16-70245, Claim No. 41-1; 41-2.

[69] *Siam v. Mountain Vista Builders*, 544 S.W.3d 504, 515 (Tex. App.—El Paso 2018, no pet.).

Reticulum may have to recover from Jacob Watters or Barrett Dean arising from the arbitration . . . .” This does not alter the court's conclusion.[70] In examining the exhibits attached to the Clark Declaration, one could deduce that this provision was included to: i) clarify that the assignment was not an assignment of its "deficiency claim" against the Debtor and the Co-Defendant; and ii) prevent Russell Watters from asserting a right to payment against the Debtor and Co-Defendant on account of the $100,000.00 he contributed to Reticulum to make the loan to Total Operating.

In short, Reticulum is incorrect that the Debtor has not submitted any evidence that Reticulum has recovered any amount on its reliance damages-based claim.

Based upon the foregoing:

**IT IS ORDERED** that the Reticulum MSJ is **GRANTED** as to the Debtor's fifth affirmative defense, and is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that the Debtor MSJ is **DENIED.**

**###END OF MEMORANDUM OPINION AND ORDER###**

---

[70] Clark Dec., Ex. D, ECF. No 47-1.